**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
             jsmith@bursor.com
             breed@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELBY BAKER, on behalf of herself and all others similarly situated,<br><br>                           Plaintiff,<br>       v.<br><br>BEECH-NUT NUTRITION CORPORATION,<br><br>                           Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Shelby Baker ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendant Beech-Nut Nutrition Corporation ("Beech-Nut" or "Defendant") on information and belief, except that Plaintiff's allegations as to her own actions are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action seeks to recover damages and remedy Defendant's continuing failure to warn individuals that Beech-Nut Baby Food (the "Products") expose consumers to heightened levels of toxic heavy metals, including lead, arsenic, cadmium, and/or mercury.

2. A February 2021 report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("House Subcommittee") reveals that certain brands of commercial baby food – including Defendant's Products – are tainted with significant levels of toxic heavy metals.

3. Heightened levels of toxic heavy metals in foods can cause cancer and serious and often irreversible damage to brain development as well as other serious health problems. Although this action does not allege a claim under California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), the amount of toxic heavy metals found in the Products violates that statute too.

4. As described more fully below, consumers who purchase the Products are injured by Defendant's acts and omissions concerning the presence of heightened levels of toxic heavy metals. No reasonable consumer would know, or have reason to know, that the Products contain heightened levels of heavy metals. As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers of Beech-Nut Baby Food.

**PARTIES**

5. Plaintiff Shelby Baker is a resident of Bakersfield, California and a citizen of the State of California. Ms. Baker has purchased Defendant's baby food Products for household use within the last two months. Had Defendant disclosed on the label that those products contained high levels of toxic heavy metals, Ms. Baker would have been aware of that fact and would not

1  have purchased the products. After learning of the high levels of toxic heavy metals, Ms. Baker

2  stopped purchasing these products. However, Ms. Baker regularly visits stores where Defendant's

3  products are sold and remains interested in purchasing healthy, safe baby food for her children.

4  She would consider purchasing Defendant's Products in the future if Defendant removed the

5  heightened levels of toxic heavy metals.

6        6.     Defendant Beech-Nut Nutrition Corporation is a foreign corporation with its

7  headquarters in Amsterdam, New York. Beech-Nut manufactures, markets, and sells Beech-Nut

8  baby food products throughout California and the United States.

**JURISDICTION AND VENUE**

10       7.     This Court has subject matter jurisdiction over this action pursuant to the Class

11 Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28

12 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as

13 here: (a) there are 100 or more members in the proposed classes; (b) some members of the

14 proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed

15 class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28

16 U.S.C. § 1332(d)(2) and (6).

17       8.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts

18 significant business within this District, Plaintiff resides within this District, and a substantial part

19 of the events giving rise to Plaintiff's claims took place within this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

21 **I.**    **Lead And Arsenic Are Toxic**

22       9.     Lead and arsenic are heavy metals. The harmful effects of heavy metals are well-

23 documented, particularly on children. Exposure puts children at risk for lowered IQ, behavioral

24 problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among

25 other health issues. Heavy metals pose risks to adults. Even modest amounts of heavy metals can

26 increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.

1  Because the average person comes into contact with heavy metals many times and from many
2  sources, it is important to limit exposure, particularly with respect to children.

3        10.    Lead can affect almost every organ and system in the body.  Lead accumulates in
4  the body over time, and can lead to health risks and toxicity, including inhibiting neurological
5  function, anemia, kidney damage, seizures, and in extreme cases, comas and death.  Lead can also
6  cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks,
7  including reduced growth and premature birth.

8        11.    "No amount of lead is known to be safe."[1]  The "EPA and the Centers for Disease
9  Control and Prevention (CDC) agree that there is no known safe level of lead in a child's blood.
10  Lead is harmful to health, especially for children."[2]

11        12.    Arsenic is dangerous to humans too.  Long term exposure is linked to cardiovascular
12  disease.  Arsenic can also cause bladder, lung, liver, and skin cancer, and strokes and diabetes.
13  Recent studies have suggested that arsenic may cause IQ deficits in children and may be harmful to
14  fetal development.

15        13.    There is "essentially no safe level" of arsenic.[3]

16        14.    The People of the State of California declared by initiative under Proposition 65
17  their right "[t]o be informed about exposures to chemicals that cause cancer, birth defects, or other
18  reproductive harm."  Proposition 65, § 1(b).  To effectuate this goal, California's Proposition 65,
19  Health & Safety Code § 25249.5, et seq., prohibits exposing people to chemicals listed by the State
20  of California as known to cause cancer, birth defects or other reproductive harm above certain
21  levels without a "clear and reasonable warning," unless the business responsible for the exposure
22  can prove that it fits within a statutory exemption.

---

[1] *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last visited July 2, 2019).
[2] *See* https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water (last visited July 2, 2019).
[3] *See* https://publicintegrity.org/environment/what-to-do-if-your-drinking-water-contains-arsenic/ (last visited July 2, 2019).

15. Lead and lead compounds are subject to the clear and reasonable warning requirement regarding carcinogens under Proposition 65.  Specifically, a Proposition 65 warning is required where a total daily intake of lead exceeds .5 mcg.

16. Arsenic and arsenic compounds are subject to the clear and reasonable warning requirement regarding carcinogens under Proposition 65.  Specifically, a Proposition 65 warning is required where a total daily intake of lead exceeds 0.5 mcg.

17. This Complaint does not allege a violation of Proposition 65.  Proposition 65 is relevant, however, to the extent it provides information concerning the material omissions in violation of California's Consumer Protection laws, and guidance as to a reasonable consumer's purchasing decisions.  Reasonable consumers purchased the Products believing, among other things, that they were in compliance with all applicable California regulations and safe according to California regulatory thresholds.  Reasonable consumers would not have purchased the Products if they had known that they contained heightened levels of lead and arsenic, or they would have purchased them on different terms.  Because the presence of lead and arsenic pertain to safety, Defendant had a duty to disclose that its products contained heightened levels of lead and arsenic, independent of any duty imposed by Proposition 65.

**II.    Beech-Nut Baby Food Has Heightened Levels Of Arsenic, Lead, and Cadmium**

18. In February of 2021, the House Subcommittee published a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury."

19. Among the products tested were Defendant's baby food Products.  With respect to arsenic, "Beech-Nut used ingredients [in its baby food Products] after they tested as high as 913.4 ppb arsenic; Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic; Beech-Nut unnecessarily uses high-arsenic additives to address issues like 'crumb softness.'"

20. With respect to lead, "Beech-Nut used ingredients containing as much as 886.9 ppb lead; Beech-Nut routinely used ingredients with high lead content, including 483 ingredients that contained over 5 ppb lead, 89 ingredients that contained over 15 ppb lead, and 57 ingredients that contained over 20 ppb lead."

21. With respect to cadmium, "Beech-Nut used ingredients in its baby food containing up to 344.55 ppb cadmium; 105 Beech-Nut ingredients tested over 20 ppb cadmium."

22. A copy of the Subcommittee's heavy metal testing can be accessed at http://oversight.house.gov/sites/democrats.oversight.house.gov/files/4.xlsx.

23. Worse yet, the Subcommittee found that Defendant "did not even test for mercury in baby food."

24. Notably, the Subcommittee also found that "Beech-Nut has set an internal specification limit … of 3,000 ppb inorganic arsenic for certain ingredients, including vitamin mix. As a result of adopting this high internal standard, Beech-Nut has used ingredients containing 710.9, 465.2, and 401.4 ppb arsenic.  Beech-Nut also set internal guidelines of 3,000 ppb for cadmium and 5,000 ppb for lead for certain ingredients.  <u>These far surpass any existing regulatory standard in existence and toxic heavy metal levels for any other baby food manufacturer that responded to the Subcommittee's inquiry</u>."  (emphasis added).

25. The Subcommittee also found that "Beech-Nut sold eleven products that surpassed its own internal cadmium limits. By doing so, Beech-Nut accepted dehydrated potato containing 119.6, 143.5, and 148.4 ppb cadmium, far surpassing its own internal limit of 90 ppb for that ingredient."

26. As noted in a 2019 Consumer Reports article titled "*Arsenic and Lead Are in Your Fruit Juice:  What You Need to Know*", "[c]hildren are particularly vulnerable to the harmful effects of heavy metals," and early exposure can "affect their whole life trajectory."



27. Defendant has chosen to ignore the health of the consuming public in pursuit of profit.

### III. The High Presence of Toxic Heavy Metals In Baby Foods Far Exceeds Consumer Expectations

28. Parents' instinctive desire to protect and ensure the healthy development of their children is well-known. As such, the safety of baby food is of paramount importance, and is a material fact, to consumers (such as Plaintiff and Class members).

29. More specifically, given the negative effects of toxic heavy metals (such as arsenic, lead, cadmium, and mercury) on child development, the presence of these substances in baby food is a material fact to consumers (such as Plaintiff and members of the Class). Indeed, consumers—such as Plaintiff and members of the Class—are unwilling to purchase baby food that contains elevated levels of toxic heavy metals.

30. Defendant knows that the safety of its brand of baby food (as a general matter) is a material fact to consumers.

31. Defendant also knows that consumers (such as Plaintiff and members of the Class) are unwilling to purchase their respective brands of baby food that contain elevated levels of toxic heavy metals.

32. As such, Defendant also know that the presence of toxic heavy metals in its brand of baby food is a material fact to consumers (such as Plaintiff and Class members).

33. Baby food manufacturers (such as Defendant) hold a special position of public trust. Consumers believe that they would not sell products that are unsafe. *See*, Subcommittee Report, p. 6.

34. Defendant knew that if the elevated levels of toxic heavy metals in its baby food was disclosed to Plaintiff and Class members, then Plaintiff and Class members would be unwilling to purchase it.

35. In light of Defendant's respective knowledge that Plaintiff and Class members would be unwilling to purchase its baby food Products if they knew that those brands of baby food

contained elevated levels of toxic heavy metals, Defendant intentionally and knowingly concealed this fact from Plaintiff and Class members, and did not disclose the presence of these toxic heavy metals on the labels of the Products.

36. Defendant knew that Plaintiff and Class members would rely upon the representations and omissions contained on the packages of the Products, and intended for them to do so.

37. Defendant knew that in relying upon the representations and omissions contained on the packages of the Product (respectively), Plaintiff and Class members would view those products as being safe for consumption, given their represented lack of certain deleterious substances (*e.g.*, BPA, GMOs), and Defendant's concealment of the fact that those brands of baby food contained elevated levels of toxic heavy metals.

38. Prior to purchasing the Product Plaintiff and Class members were exposed to, saw, read, and understood Defendant's representations and omissions regarding the safety of their baby food, and relied upon them.

39. As a result of Defendant's respective representations regarding the safety of their baby food, and Defendant's concealment of the fact that its baby food contained elevated levels of toxic heavy metals, Plaintiff and Class members reasonably believed that Defendant's Products were free from substances that would negatively affect children's development.

40. In reliance upon Defendant's respective representations and omissions, Plaintiff and Class members purchased Defendant's baby food Products.

41. Had Plaintiff and Class members known the truth—*i.e.*, that Defendant's respective brands of baby food contained elevated levels of toxic heavy metals, rendering them unsafe for consumption by children—they would not have been willing to purchase them at all.

42. Therefore, as a direct and proximate result of Defendant's misrepresentations and omissions concerning their respective brands of baby food, Plaintiff and Class members purchased the Products.

43. Plaintiff and Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth. Since the presence of elevated levels of toxic heavy metals in baby food renders it unsafe for human consumption, the Products that Plaintiff and Class members purchased are worthless.

## CLASS ACTION ALLEGATIONS

44. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale. Plaintiff reserves the right amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

45. Plaintiff also seeks to represent a Subclass of all Class Members who purchased the Products in California (the "California Subclass").

46. At this time, Plaintiff does not know the exact number of members of the Class; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiff believes that class members are so numerous that joinder of all members is impracticable.

47. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the class and subclass that predominate over questions that may affect individual class members include:

   a. whether the Products contain toxic heavy metals;
   b. whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;
   c. whether the amount of toxic heavy metals in the Products is material to a reasonable consumer;
   d. whether Defendant had a duty to disclose that its Products had heightened levels of toxic heavy metals;

  e. whether Plaintiff and members of the Class are entitled to injunctive and other equitable relief;

  f. whether Defendant failed to disclose material facts concerning the Products;

  g. whether Defendant's conduct was unfair and/or deceptive;

  h. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and class members;

  i. whether Defendant breached implied warranties to Plaintiff and class members;

  j. whether Plaintiff and class members have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

48. Plaintiff's claims are typical of those of the class members because Plaintiff, like other class members, purchased, in a typical consumer setting, a Product and Plaintiff sustained damages from Defendant's wrongful conduct.

49. Plaintiff will fairly and adequately protect the interests of the class members and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class or the Subclass.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

51. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making appropriate equitable relief with respect to the Class and the Subclass as a whole.

52. The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the

interests of the Class and the Subclass even where certain Class members are not parties to such actions.

## CAUSES OF ACTION

### FIRST COUNT
**(Violation of California Business & Professions Code § 17200 *et seq.*,
Based on Fraudulent Acts and Practices)**

53. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

54. Plaintiff brings this claim individually and on behalf of the Subclass members.

55. Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

56. Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public. This conduct includes, but is not limited to, failing to disclose that the Products contain heightened levels of toxic heavy metals.

57. After reviewing the packaging for the Product, Plaintiff purchased the Product in reliance on Defendant's omissions. Plaintiff would not have purchased the Products at all if she had known of Defendant's material omission that the Products contain heightened levels of toxic heavy metals. Plaintiff and class members have all paid money for the Products. However, Plaintiff and class members did not obtain the full value or any value of the advertised products due to Defendant's omissions regarding the heightened levels of toxic heavy metals. Accordingly, Plaintiff and class members have suffered injury in fact and lost money or property as a direct result of Defendant's material omissions.

58. By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code §17200.

59. In accordance with California Business & Professions Code §17203, Plaintiff seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

60. As a result of Defendant's conduct, Plaintiff seeks restitution, disgorgement, and injunctive under California Business & Professions Code §17203

**SECOND COUNT**
**(Violations of California Business & Professions Code §17200, *et seq.*,**
**Based on Commission of Unlawful Acts)**

61. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

62. Plaintiff brings this claim individually and on behalf of the Subclass members.

63. The violation of any law constitutes an unlawful business practice under California Business & Professions Code §17200.

64. Defendant has violated §17200's prohibition against engaging in unlawful acts and practices by, inter alia, making omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200 et seq., California Health & Safety Code §110660, 21 U.S.C. §321, and by violating the common law.  Proposition 65 is not a predicate violation for the claim under the unlawful prong of the UCL.

65. By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

66. Plaintiff purchased the Products in reliance on Defendant's representations that the Products were fit for consumption and based on the omissions as to the amount of toxic heavy metals contained therein.  Plaintiff would not have purchased the Products at all had she known Defendant's omissions.  Plaintiff and class members paid money for the Products.  However, Plaintiff and class members did not obtain the full value, or any value, of the advertised products due to Defendant's omissions regarding the Products.  Accordingly, Plaintiff and class members have suffered injury in fact and lost money or property as a direct result of Defendant's material omissions.

67. In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

68. As a result of Defendant's conduct, Plaintiff seeks restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

**THIRD COUNT**
**(Violations of California Business & Professions Code §17200, *et seq.*,
Based on Unfair Acts and Practices)**

69. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

70. Plaintiff brings this claim individually and on behalf of the Subclass members.

71. Under Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

72. Defendant has engaged, and continue to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. This conduct includes failing to disclose that the Products contain heightened levels of toxic heavy metals.

73. Defendant has engaged, and continue to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil Code §1770 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars; (3) California Health & Safety Code §110660 and 21 U.S.C. §321 against misbranding food. Proposition 65 is not a predicate violation for the claim under the unfair prong of the UCL. Defendant gained an unfair advantage over its competitors, whose labeling, advertising, and marketing for other similar products must comply with these laws.

74. Defendant's conduct is substantially injurious to consumers. Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the Products at all but for Defendant's omissions regarding the levels of toxic heavy

1  metals contained in the Products. Such injury is not outweighed by any countervailing benefits to

2  consumers or competition.  Indeed, no benefit to consumers or competition results from

3  Defendant's conduct.  Since consumers reasonably rely on Defendant's representations, and thus

4  also their omissions, and injury results from ordinary use of the Products, consumers could not

5  have reasonably avoided such injury.  *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-

6  98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010)

7  (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

8      75.    By committing the acts alleged above, Defendant has engaged in unfair business

9  acts and practices which constitute unfair competition within the meaning of Business &

10 Professions Code §17200.

11     76.    Plaintiff purchased the Products believing them to be fit for consumption due to its

12 omissions regarding the heightened levels of toxic heavy metals in the Products.  Plaintiff would

13 not have purchased the Product at all but for Defendant failing to disclose that they contained toxic

14 heavy metals in high quantities.  Plaintiff and class members paid money for the Products.

15 However, Plaintiff and class members did not obtain the full value of the advertised products due

16 to Defendant's omissions regarding the nature of said Products.  Accordingly, Plaintiff and class

17 members suffered an injury in fact and lost money or property as a direct result of Defendant's

18 material omissions.

19     77.    In accordance with California Business & Professions Code §17203, Plaintiff seeks

20 an order enjoining Defendant from continuing to conduct business through its fraudulent conduct

21 and further seeks an order requiring Defendant to conduct a corrective advertising campaign.

22     78.    As a result of Defendant's conduct, Plaintiff seeks restitution, disgorgement, and

23 injunctive relief under California Business & Professions Code §17203.

### FOURTH COUNT
### (Violations of the California Consumer Legal Remedies Act)
### (Injunctive Relief Only)

26     79.    Plaintiff incorporates by reference the foregoing paragraphs of Complaint as if fully

27 stated herein.

28

80. Plaintiff brings this claim individually and on behalf of the Subclass members.

81. Plaintiff purchased Defendant's Products for household use.

82. The acts and practices of Defendant as described above were intended to deceive Plaintiff and class members as described herein, and have resulted, and will result, in damages to Plaintiff and member of the Subclass. These actions violated, and continue to violate, the California Consumers Legal Remedies Act ("CLRA") in at least the following respects:

    a. In violation of California Civil Code §1770(a)(5) of the CLRA, Defendant's acts and practices constitute representations or omissions deceiving that the Products have characteristics, uses, and/or benefits, which they do not;

    b. in violation of California Civil Code §1770(a)(7) of the CLRA, Defendant's acts and practices constitute representations that the Products are of a particular quality, which they are not; and

    c. in violation of California Civil Code §1770(a)(9) of the CLRA, Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

83. By committing the acts alleged above, Defendant has violated the CLRA.

84. Plaintiff and Subclass members suffered injuries caused by Defendant's misrepresentations and/or omissions because they were induced to purchase the Products they would not have otherwise purchased if they had known that they contained heightened levels of toxic heavy metals.

85. In compliance with the provisions of California Civil Code §1782, Plaintiff sent written notice to Defendant on February 24, 2021, informing Defendant of her intention to seek damages under California Civil Code §1750, *et seq*. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, Plaintiff seeks damages from Defendant for its violations of the CLRA.

86.     Plaintiff and class members are entitled to, pursuant to California Civil Code §1780, an order enjoining the above-described wrongful acts and practices of Defendant, and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

**FIFTH COUNT**
**(Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*. and California Commercial Code § 2314)**

87.     Plaintiff incorporates by reference the foregoing paragraphs of Complaint as if fully stated herein.

88.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

89.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to be used as chainsaws) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

90.     The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

91.     Plaintiff and the Class members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

92.     Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

93.     Defendant impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  In order for

a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Defendant breached these implied warranties because the Products were unsafe and defective. Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

94. Plaintiff and Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

95. The Products were not altered by Plaintiff or Class members.

96. The Products were defective at the time of sale when they left the exclusive control of Defendant. The defect described in this complaint was latent in the product and not discoverable at the time of sale.

97. Defendant knew that the Product would be purchased and used without additional testing by Plaintiffs and Class members.

98. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they contained high levels of toxic heavy metals.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed classes the following relief against Defendant:

   a. That the Court certify the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and her attorneys as Class Counsel to represent the members of the Class and Subclass;
   b. That the Court declare that Defendant's conduct violates the statutes referenced herein;
   c. That the Court preliminarily and permanently enjoin Defendant's from conducting business through the unlawful, unfair, or fraudulent business acts or practices,

untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

d. That the Court order preliminary and injunctive relief requiring Defendant to disclose that its products contain heightened levels of toxic heavy metals;

e. That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

f. That the Court order Defendant to notify each and every individual and/or business who purchased the Products of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

g. That the Court grant Plaintiff's reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure §1021.5, California Civil Code §1780(d), the common fund doctrine, and/or any other appropriate legal theory; and

h. That the Court grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 25, 2021          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Joel D. Smith*
         Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Email: ltfisher@bursor.com
           jsmith@bursor.com
           breed@bursor.com

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Joel Smith, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Shelby Baker in this action. Shelby Baker is a resident of Bakersfield, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 24th day of February 2021.

                                        */s/ Joel D. Smith*
                                          Joel D. Smith

CLRA VENUE DECLARATION